1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRANK RICHMOND, MICHAEL MCDERMOTT and KELLEY MCDERMOTT, each individually and on behalf of all others similarly situated, | Civil Action No.:_____ |
| Plaintiffs, | |
| vs. | **CLASS ACTION COMPLAINT** |
| HOME PARTNERS HOLDINGS LLC, HP WASHINGTON I LLC, HPA BORROWER 2017-1 LLC, and OPVHHJV LLC, d/b/a PATHLIGHT PROPERTY MANAGEMENT, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Complaint - 1

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

Frank Richmond, Michael McDermott, and Kelley McDermott (collectively "Plaintiffs"), each individually and on behalf of all others similarly situated, bring this action against Home Partners Holdings LLC ("Home Partners"), HP Washington I LLC, HPA Borrower 2017-1 LLC, and OPVHHJV LLC d/b/a Pathlight Property Management ("Pathlight") (collectively "Defendants"), and allege as follows:

### INTRODUCTION

1.      Landlord-tenant law is predicated on the relationship it confers upon the parties to a rental agreement.

2.      A pillar of that relationship is that landlords, not tenants, are responsible for ensuring they "keep the premises fit for human habitation[.]" Wash Rev. Code § 59.18.60.

3.      Washington law also provides for landlord remedies in the event the disrepair has been caused by a tenant's conduct.

4.      These mandatory landlord duties, and the rights they confer on tenants, originated in common law as the Covenants of Habitability and are codified in Washington's statutes.

5.      Indeed, Washington law imposes duties on landlords, and those duties are significantly more stringent than those of the common law.

6.      Washington statutes enumerate a series of specific landlord duties, including maintaining the premises in compliance with any applicable code, statute, ordinance, or regulation, and maintaining various structural components not only in habitable condition, but "in reasonably good repair so as to be usable[.]" Wash. Rev. Code § 59.18.060.

7.      Further, Washington law explicitly forbids parties from waiving many of the protections the statutes provide for tenants. Wash. Rev. Code § 59.18.230.

Complaint - 2

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

8.      Nonetheless, under the guise of offering a potential home to own, Defendants routinely enter into adhesive form leases that purport to waive and modify a landlord's duties through several different lease provisions found in Defendants' adhesion contract forms.

9.      During and at the end of tenancies, Defendants pursue their tenants for payment of pre-existing or other damage to Defendants' real and personal property that was not caused by the tenants at all.  Defendants' conduct violates statutory landlord-tenant and consumer protection laws.

10.     Defendants are some of the many corporate investors of residential real estate who have swarmed into metropolitan area real estate markets, hoping to profit from the growing demand for single-family homes.

11.     Large private equity groups, hedge funds, and other large investors spent a combined $36 billion on more than 200,000 homes between 2011 and 2017.

12.     In effect, these large entities are building a new corporate landlord-tenant scheme across the country.

13.     While large corporate entities have been involved in the housing market since before the 2010 foreclosure crisis, their involvement continues to grow. These corporate landlords claim their buying efforts will stabilize the country's most dilapidated housing markets, and further claim they will be even better landlords than traditional, local landlords by using their capital to maintain the homes and make home rentals easy and affordable.

14.     However, over time, these corporate landlords have displaced individual home buyers (or individual landlords and property owners) not only in housing markets decimated by foreclosure, but also in healthy urban, suburban, and exurban residential real estate markets, leading to "higher prices throughout the market, greater competition at the time of sale, and out-of-state landlords showing less care for properties and renters."

Complaint - 3

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

**PARTIES**

15.     Frank Richmond ("Richmond") is an adult residing in Port Orchard, Washington, and is a citizen of Washington.

16.     Michael and Kelley McDermott ("the McDermotts") are adults residing in Tacoma, Washington, and are citizens of Washington.

17.     Defendant Home Partners Holdings LLC is incorporated in Delaware, with its principal place of business in Chicago, Illinois.

18.     Richmond's lease indicates he entered into an agreement with Defendant HP Washington I LLC.

19.     The McDermotts entered into a lease agreement with Defendant HPA Borrower 2017-1 LLC.

20.     Upon information and belief, Home Partners or one of its subsidiaries operates and purchases homes through separately incorporated shell limited liability companies ("LLCs").

21.     Home Partners (or one of its officers or employees) is a member of those LLCs. Defendants HP Washington I LLC and HPA Borrower 2017-1 LLC are two of these entities. Both are incorporated in the State of Delaware, with their principal place of business in Chicago, Illinois.

22.     Upon information and belief, Defendants conduct business through multiple, separately incorporated shell LLCs, incorporated in Delaware and registered in various states where the homes are located.

23.     HP Washington I LLC, HPA Borrower 2017-1 LLC and these other LLCs were, at all relevant times, the agent, servant, employee, alter-ego, or joint venture of Defendant Home Partners, and acted within the course and scope of such agency, employment, alter-ego, or in furtherance of the joint venture, and with the permission and consent of each of the other Defendants.

Complaint - 4

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

24.     Defendant OPVHHJV LLC, d/b/a Pathlight Property Management is a subsidiary, agent, and alter ego of Home Partners of America.

25.     Defendant Pathlight is incorporated in Texas, with its principal place of business in Texas.

## JURISDICTION AND VENUE

26.     This Court has original subject matter jurisdiction over this controversy pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because Plaintiffs and members of the proposed Class are citizens of states different than Defendants' home states, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this District and intentionally and purposefully market, promote, and place their homes into the stream of commerce throughout the United States.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants marketed, advertised, leased, and sold the affected homes, as well as conducted extensive business, within this District.

## FACTUAL ALLEGATIONS

**I.      Defendants' lease to purchase scheme**

29.     Defendants collectively own, lease, and manage approximately 17,000 homes in 70 markets located in 32 states.

30.     Cementing their alter ego relationship, Pathlight states on its website that both Pathlight and Home Partners "are proud to offer" lease programs to prospective tenants.

31.     Home Partners is now a subsidiary of Blackstone Inc., a New York City-based investment firm.

Complaint - 5

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

32.     In a $6-billion dollar deal, Blackstone purchased Home Partners through an investment fund called Blackstone Real Estate Income Trust.

33.     Blackstone is one of many large firms to capitalize off the 2010 foreclosure crisis precipitated by the Great Recession.

34.     As thousands of families lost their homes, the federal government launched a pilot program that allowed Blackstone and other private investors, some of whom facilitated the financial crisis in the first place, to purchase swaths of foreclosed homes from Fannie Mae.

35.     Against this background, Home Partners and Pathlight entered the residential real estate market in 2012 as real estate investment and property management group, claiming that by purchasing homes on behalf of residents in markets nationwide, they would help thousands of home-seekers live in a home they otherwise were not yet ready to purchase, under terms that best fit their needs.

36.     Defendants state they rent single-family homes to persons in three primary demographics: (1) recent transferees to an unfamiliar or new city or suburb; (2) persons desiring to live in a single-family home, but who lack the creditworthiness to obtain a mortgage; and (3) persons who want to rent a single-family home but who are "uncertain" about home ownership.

37.     Defendants peddle to these demographics through targeted marketing to real estate agents, and through online and print advertisements that advertise the availability of homes.

Complaint - 6

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

38.     Defendants market themselves as a joint entity: Pathlight's web site (https://www.pathlightmgt.com/)[1] contains a Home Partners' logo and reference[2], demonstrating their interlocking relationship.

39.     Specifically, Pathlight's web site makes numerous references to Home Partner's lease and refers to homepartners.com for terms and conditions.

40.     In addition, Pathlight's web site also states, in relevant part, "Home Partners of America is committed to making homeownership a reality for more people by providing a clear path to homeownership. Our process is easy, transparent, and built on a foundation of choice and flexibility. Home Partners is helping people get into great homes, in neighborhoods they love, with the opportunity to build a more secure financial future."

41.     Home Partners' web site states, "[f]rom the beginning, Home Partners and Pathlight communicate with residents throughout the entire process. Once the house has closed and the Make-Ready renovations have been completed, Pathlight will send a Welcome Email to residents that outlines the move-in process and answers questions that may arise during the lease term."

42.     Defendants market extensively through their own web sites as well as local real estate agencies.

43.     Once a prospective tenant expresses interest in a particular property, Defendants together claim they expend significant effort and resources to purchase a particular home on the prospective tenant's behalf.

---

[1] Last visited on August 6, 2022.

[2] Compare with the logo at Home Partners' website: https://www.homepartners.com/. Last visited on August 6, 2022.

Complaint - 7

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

44.     Though Defendants claim in their form documentation that they are purchasing properties specifically selected by a prospective tenant prior to rental, Home Partners (either wholly or through its alter ego LLCs) likely and often already owns the home.

45.     Indeed, a recent search of Pathlight's property listing of available homes yielded more than 60 available homes across the state of Washington.

46.     To induce persons to go through Home Partners and the lease-to-purchase program, Home Partners represents "[o]nce a home is identified and approved by Home Partners, Home Partners will attempt to purchase the home – the outcome of which will depend on certain conditions being met such as agreeing on a purchase price with the seller, a satisfactory inspection, attorney review of the purchase contract, and other closing conditions being satisfied." Thus, Home Partners represents the house is "qualified" and has passed its inspection.

47.     Pathlight further represents, for every home available for lease, that the home is "[p]rofessionally managed by Pathlight Property Management, the exclusive property manager for Home Partners of America, offering excellent customer service, 24/7 emergency maintenance service, online application and payments, and pet-friendly options."

48.     For each house, Defendants set both a monthly base rent for each year in which a tenant occupies a house.

49.     Base rent increases by up to 3.75% year over year, which is above average for many metropolitan areas where Defendants rent homes.

50.     Defendants also establish an "Estimated Acquisition Cost" (also defined in Defendants' form documents as the "Purchase Price") if the tenant chooses to exercise the "right" to purchase during or at the end of the lease. Incorporated into the Estimated Acquisition Cost are "make ready" costs allegedly expended by Defendants prior to move-in and during tenancy.

Complaint - 8

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

51.     Defendants state and admit they do not negotiate these amounts with tenants and unilaterally set the house's estimated purchase price above the actual amount expended to purchase the house, closing costs included.

52.     Nonetheless, in contradiction of the foregoing statements, which are provided to the general public and tenants before they sign any lease, Home Partners later represents in its form adhesion leases that "the amount of Rent was negotiated with the express understanding that Tenant will be responsible for the maintenance needs of the Premises."

53.     Home Partners is not a lender.

54.     Consumers who wish to exercise the option to purchase must secure a mortgage from a third party, just as with any traditional home purchase.

55.     Home Partners does not apply or credit any amount paid in rent or on maintenance or repair during the lease term to reduce the purchase price or to be applied as a down payment.

56.     In other words, consumers who rent through Defendants do not build equity in the home.

57.     Only 20% of the persons who enter the lease-to-purchase agreements with Home Partners eventually purchase the home.

58.     At bottom, and as further described herein, Defendants' lease-to-purchase program is an elaborate ruse designed to induce and convince prospective customers that they are renting a specially chosen, "qualified" i.e., quality home that is different than, and an alternative to, a traditional rental—and then to convince consumers to agree to take on substantial homecare burdens foisted on tenants by Defendants' adhesive form leases.

59.     Despite their effort to establish an extra-legal relationship with their tenants through these elaborate contracts of adhesion, Defendants cannot write their way out of their statutory legal obligations to their tenants.

Complaint - 9

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

## II.     Defendants' form contracts shift the burden of repair onto tenants.

60.     Since at least 2016, Defendant Home Partners has included provisions in its carefully crafted form leases that illegally purport to shift its maintenance obligations onto tenants, including for situations where the damage is not caused by the tenant's conduct:

a.     "Tenant shall, at Tenant's expense, maintain the Premises (including all appliances, systems and fixtures located thereon…)…and keep same in a clean, safe and healthy condition and in good working order." (emphasis in original)

b.     "Tenant agrees to pay for (a) all repairs, maintenance or replacement required to the Premises, including the walls, windows, storms (sic) doors/windows and screens, ceilings, paint, plastering, plumbing work, pipes, and fixtures belonging to the Premises, whenever damage or injury to the same shall have resulted from misuse, waste or neglect by the Tenant…" (emphasis in original)

61.     Defendants further disclaim in form leases any obligation to comply with the Covenants of Habitability, stating "Tenant hereby represents, warrants and acknowledges that it is leasing the Premises in its 'AS-IS, WHERE-IS, WITH ALL FAULTS' condition, fitness for any particular purposes, merchantability, habitability or any other warranty of any kind, nature, or type whatsoever[.]"

62.     These lease provisions are designed to obscure, mislead, and misrepresent Defendants' true legal obligations to renters.

63.     As further evidence of an intent to mislead and misrepresent obligations to renters and to shift the costs of repair onto tenants, Home Partners represents that as a component of its lease-to-purchase program, the parties have a "mutual responsibility to maintain the home," in contrast to the traditional landlord-tenant relationship, and that this alleged "mutual responsibility" creates an advantage for the tenant over the traditional landlord-tenant relationship.

Complaint - 10

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

1    64.    Defendants fail to disclose, however, that nothing in their unwieldy, lengthy "Residential Lease Agreement" can abridge a tenant's rights, nor does the lease create anything other than a traditional landlord-tenant relationship.

65.    Defendants' "as-is" and burden-shifting repair provisions mislead consumers about their guaranteed rights and remedies under applicable state law by misrepresenting to consumers that they, not Defendants, are required to keep Defendants' properties in reasonable repair. Thus, in addition to misrepresenting tenants' rights, Defendants' leases are agreements with tenants that purport to waive or modify the landlord's duties in direct violation of the law.

66.    Defendants' burden-shifting maintenance and repair provisions not only contravene the common law covenants of habitability and state statutes, but also deceptively and misleadingly suggest to tenants that their signatures on the lease constitute a waiver of their right to habitable housing.

67.    These unlawful provisions have and continue to have the effect of fraudulently stripping consumers of their legal rights and burdening them with repair efforts and expenses that the law explicitly requires Defendants to bear.

68.    Defendants obtain an independent inspection and property appraisal, allegedly for the benefit of the tenant, yet none of the Defendants provide tenants with the inspection report or the appraisal.

69.    When tenants request a copy of the inspection report, Defendants refuse to produce it.

70.    Instead, these provisions are given to Defendants and undertaken on Defendants' behalf prior to Home Partners' purchase of the home.

71.    As owners and property managers of the home, they are in the best position to obtain and provide that information.

Complaint - 11

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

72.     Thus, no Defendant discloses the existence of any pre-existing damage to the home of which they may have already been aware.

73.     Pathlight further represents that since the property being purchased will be a rental, county or municipal inspections may occur only after Home Partners closes on a home, allowing Defendants to rent the home under local licensing requirements.

74.     Therefore, not only may a property be unavailable for rent upon closing, it may not be available until it passes the mandatory inspection.

75.     Pathlight does not disclose the results of these inspections.

76.     Despite the lengthy and specific list of duties Washington statutes confer on every landlord, during the tenancy, and as described herein, Pathlight often refuses to make even basic repairs, undertake repairs required by the form lease and statute, and suppresses tenants' ability to report repair concerns and to have repairs completed.

77.     This is due in part to the fact that instead of employing a local agent or property manager who personally responds to a tenant's maintenance request, that request is directed to an out-of-town call center or a web site that purports to be managed by Pathlight, which then assigns a maintenance worker, who requires the tenant be on-site to make the repair – that is, if Pathlight agrees to the repair in the first place.

78.     Pathlight requires tenants to use an online "Resident Portal" for all communications, including repair requests.

79.     Pathlight claims to respond to tenants within 24 hours, yet they rarely reply.

80.     If they do actually reply, the reply is often sent well beyond the 24-hour timeline Pathlight promises.

Complaint - 12

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

81.     Because Pathlight frustrates tenants' attempts to successfully make maintenance requests, the result is a system whereby tenants, not Defendants, are forced to pay for repairs and maintenance that they are not required to make under the lease or applicable state law.

82.     In addition to paying out of pocket for repairs to Defendants' properties as they arise, or from their security deposits at the end of tenancy, tenants also use their own funds every month to comply with Defendants' so-called "Minimum Required Insurance", which is listed as a clause within the lease and also as an addendum to the lease. Tenants are required to procure their own insurance in the amount of $300,000 for "damage to our property during your lease term," otherwise, Defendants automatically enroll tenants into their "Master Resident Liability Program" in the amount of $100,000, which solely covers Defendants' property.

83.     Pathlight force places tenants in this "Master Resident Liability Program" for $13 per month if tenants do not procure their own renters' insurance, with the understanding that "such policy will be purchased by the Landlord for its own benefit." Pathlight discourages tenants from procuring outside insurance, stating that "using an outside provider may cost $20 per month or more."

84.     If tenants procure their own insurance, tenants are required to name Pathlight as an "additional interested party" on the general liability portion of the policy.

85.     Defendants additionally do not disclose that they intend for tenants (or their independently procured insurance coverage) to pay for and cover pre-existing, accidental, or normal wear and tear damage to Defendants' buildings and real property, not caused by tenants, which are not covered by the typical renters' insurance policy.

86.     In other words, Defendants deliberately foist the burden of insuring their own real property onto tenants.

Complaint - 13

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

87.     Even if Defendants did not enforce their illegal lease provisions, these provisions are nonetheless deceptive because consumers who read them or are told of them are likely to believe they are enforceable or that they have contractually waived their legal rights not to be responsible for repairs to Defendants' own property.

**III.     Plaintiff Richmond's experience**

88.     Richmond and his family began renting a home through Defendants in Port Orchard, Kitsap County, Washington in September 2021.

89.     Richmond was looking to rent a home, and rented through Defendants because Defendants' representations, as described above, led him to believe they would provide a quality home that would not require substantial upkeep or maintenance, based upon the assurance of quality and inspection provided by Defendants.

90.     Richmond was not committed to purchasing the home through Defendants, but he considered it a possibility.

91.     Defendants had already purchased multiple homes in the area, and there were very few to choose from.

92.     Richmond received Defendants' form "Residential Lease Agreement", drafted by Home Partners' lawyers and consisting of 47 clauses and 21 pages of approximately 8-point font, plus numerous attachments and addenda, and incorporated "Residential Right to Purchase Agreement."

93.     The written form lease initially set a base rent of $3,060 per month, plus a monthly $30 pet fee, for the first year of the tenancy, with yearly rent hikes of approximately 3.6% year over year.

94.     Richmond was not provided an opportunity to negotiate these amounts.

Complaint - 14

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

95.     The lease term was for a period of one year and was subject to an automatic yearly renewal provision of up to four renewals, i.e., for a total of five years.

96.     Upon move-in, the entire home was full of dirt and trash and had not been cleaned.

97.     Per Richmond's lease, Defendants are responsible for furnishing and maintaining certain appliances upon commencement of the lease period, including a refrigerator.

98.     Defendants did not supply a refrigerator until one week and several phone calls after the term began.

99.     Richmond documented various damage to the house, including chipped paint throughout the home; a broken fence; a back door that had been screwed shut; bubbling sheetrock joint tape, dents, nails, and screws in the walls and ceiling; cracks in the garage floor; broken window screens; light fixtures hung improperly and dangerously; and broken light switch plates.

100.    Richmond requested, through Defendants' rental paperwork, that the interior walls be re-painted.

101.    Defendants sent a painting crew to the home, who informed him that paint had worn off the home's exterior trim.

102.    With Washington's wet weather, the painters told Richmond that the exposed wood could soak up water and begin to rot.

103.    The painters said they would acquire a work order through Pathlight to repaint the exposed trim.

104.    Pathlight did not approve of the repair, so the wood remains exposed to the elements.

105.    Defendants informed Richmond he must sign up for Defendants' renter's insurance plan.

Complaint - 15

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

106.    Richmond declined, informing them he already had his own liability coverage through a different provider.

107.    Despite presenting proof of his own liability insurance plan, Defendants enrolled Richmond in their "Master Resident Liability Program", without his consent, and have continued to bill him each month, effectively forcing him to pay for their insurance in addition to the insurance he obtained on his own.

108.    Despite his repeated requests, Defendants have not reimbursed him for their policy that he continues to pay.

109.    Richmond has continued to pay the amounts due and owing under the lease during his tenancy, and also maintained and provided evidence that he maintained the allegedly required renter's insurance coverage.

110.    While Richmond understood that he would be required to pay for some utilities, he did not agree to pay for any pre-existing damage, nor was he provided any reimbursement or consideration for undertaking repairs.

111.    Upon signing the rental agreement, Richmond was informed that because the house was equipped with proper ducting, Pathlight would install a new air conditioning unit prior to move-in.

112.    During the three-week window between Defendants closing on the home and Richmond moving in, the air conditioning unit was never installed.

113.    Finally, two weeks after Richmond moved in, Pathlight sent an air conditioning company to the home to provide an estimate.

114.    The air conditioning unit was eventually installed approximately one month later.

Complaint - 16

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

115.    Defendants, stating they allegedly care about air quality in their homes, force tenants, including Richmond, to pay for monthly air filter replacements for the air conditioning unit.

116.    Defendants' lease contains an "Air Filter Addendum" that requires residents to enroll in their "Utility & Maintenance Reduction Program" and pay a monthly $15 fee for air filter replacements.

117.    The "Air Filter Addendum" states "[t]here is not an opt-out option for this program, as it is designed to ensure that the air quality in your home is safe, and your system is functioning properly."

118.    The new air filtration system requires the air filters to be replaced once per year. Richmond was given an extra filter to serve as the first replacement filter.

119.    Defendants first sent and billed Richmond for air filters. The air filters only fit the old unit that had already been replaced.

120.    The air filters he continued to receive and pay for do not fit the new unit. Defendants reimbursed Richmond for some of the filters he received, however, they continue to bill Richmond for the air filters, but no longer actually send any air filters to his home.

121.    Employees from All County Septic Service ("ACSS") informed Richmond that the home's septic system is in violation of various codes, and that the septic system had been in violation since before he began renting.

122.    ACSS informed Richmond that Defendants had outstanding payments due for septic services rendered before Richmond moved in.

123.    When the septic system alarm went off, Richmond called ACSS per the information sticker on the alarm box.

Complaint - 17

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

124.    ACSS informed him he needed to contact Pathlight to fix the issue. Pathlight never responded to his requests and Richmond went more than two days without water.

125.    ACSS informed Richmond that because there was still a balance due on the account, they weren't required to tend to the alarm.

126.    However, because they were aware of Pathlight's reputation, and because Richmond did not cause the alarm to sound, ACSS agreed to provide service despite never receiving a response from Pathlight.

127.    Months after signing the lease, Defendants sent Richmond an agreement via email denoting an increase in the purchase price of the home, as well as increased monthly base rent for the remaining four years of the lease.

128.    This agreement was to be signed and returned to Defendants. Defendants have sent several email reminders requesting Richmond execute the agreement.

129.    Richmond does not agree to these increased prices and has not signed the agreement.

**IV.    Plaintiffs The McDermotts' experience**

130.    Plaintiffs Michael and Kelley McDermott currently rent a home through Defendants in Tacoma, Washington.

131.    The McDermotts began renting a home through Defendants because their representations, as described above, led them to believe they would provide a quality home that would not require substantial upkeep or maintenance, based on the assurance of quality and inspection provided by Defendants.

132.    The McDermotts received Defendants' form "Residential Lease Agreement", drafted by Home Partners' lawyers.

Complaint - 18

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

133.    The lease consists of numerous pages of approximately 8-point font, plus numerous attachments and addenda that incorporated a "Residential Right to Purchase Agreement."

134.    The McDermotts have paid the amounts due and owing under the lease during their tenancy, and also maintained and provided evidence that they maintained the allegedly required insurance liability coverage.

135.    While the McDermotts understood that they would be required to pay for some utilities, they did not agree to pay for any pre-existing damage, nor were they provided any reimbursement or consideration for undertaking repairs.

136.    Upon move-in, the entire property was covered in weeds and overgrown grass. Pathlight did not respond to the McDermotts' requests to address this issue.

137.    The McDermotts paid out-of-pocket to eradicate the weeds.

138.    Pathlight refused to fix the fence that had fallen in a storm and stated they needed the McDermotts to provide their neighbor's information in order for their neighbor to pay for half of the fence.

139.    Pathlight did not attempt to get this information themselves. Instead, they required the McDermott's to obtain this information.

140.    The McDermotts ultimately paid out of pocket to repair the fence.

141.    The McDermotts' dishwasher stopped functioning during their tenancy. The McDermotts reported the malfunction as soon as the dishwasher stopped working.

142.    Three months later, and after requesting Pathlight replace the unit multiple times, Pathlight finally furnished a functioning dishwasher.

143.    In October 2021, the McDermotts discovered black mold on the walls of their dining room.

Complaint - 19

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

144. Pathlight sent a water remediation assessor to their home, who determined the entire wall, as well as the dining room floor, would need to be torn out.

145. By removing the wall, their home became exposed to the outdoors and was replaced with plywood over the winter, which caused the McDermotts' heat bill to increase.

146. Pathlight sent multiple contractors to assess the black mold in the home.

147. Upon discovering the black mold had permeated nearly the entire home, contractors tore off the entire front of the home.

148. Work was stalled for months over the course of the winter.

149. Since the McDermotts' initial call in October 2021, Pathlight had sent multiple contractors to the home.

150. The McDermotts lived in a home constructed largely of plywood for nearly an entire year.

151. The entire front of the home was covered in tarp from approximately October 2021 to August 2022.

152. The replacement plywood is currently growing mold.

153. The McDermotts' floors remain in disrepair and Pathlight's contractor has repeatedly rescheduled the service appointment.

154. The McDermotts attempted to negotiate a rent credit with Pathlight due to their inability to use multiple rooms in the house, as well as their concerns with health hazards associated with mold.

155. Pathlight told the McDermotts they would negotiate once the work was completed.

156. Because a tremendous length of time has passed since the issue was first discovered, and the McDermotts' inability to use multiple rooms in the home, the McDermotts

Complaint - 20

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

considered hiring a contractor of their own to complete the work on the house but have not yet done so.

157.    The McDermotts estimate they have spent over 25 hours on the phone with Pathlight representatives and days taken off work to meet with the multiple, different contractors Pathlight sent to handle the black mold issue.

158.    Each contractor who reported to the McDermotts' home was unaware of the extent of the damage.

159.    The most recent contractor visited the home on May 20, 2022, with a work order indicating mere "discoloration" within the structural components of the home.

160.    In April 2022, Pathlight sent the McDermotts an agreement to renew the lease with a $300 increase in monthly rent.

161.    Due to the tremendous demand in the rental market in the Tacoma, Washington area, and their desire to keep their children in the same school district, the McDermotts felt they have had no choice but to continue renting through Defendants.

### V.    Numerous tenants nationwide complain.

162.    Plaintiffs are not alone.

163.    Across the country, numerous complaints have been lodged against either Home Partners or Pathlight through social media such as LinkedIn or Facebook, through the Better Business Bureau, or in conciliation or housing court litigation, for their failure to return security deposits owed, or to keep their properties in reasonable repair.

164.    As reported by numerous tenants, Defendants often ignore tenant repair requests or wait an inordinately long time before addressing the repair.

Complaint - 21

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

165.    For example, the Better Business Bureau contains the following litany of recent complaints:

MB

1 star

12/15/2021

BEWARE, SAFETY HAZARDS. To start, we found an electrical box on the outside wall of our home with open wires touching insulation. Later, our home flooded from the floor of the second story and ceiling of the first story during freezing winter storms. The flood damaged the kitchen and dining room ceilings, kitchen cabinets, trim, drawers, and three different types of flooring (wood, tile, and carpet) in the kitchen, dining area, and living room. Pathlight's homeowners insurance should have covered this per the lease agreement yet I don't even think Pathlight filed a homeowners insurance claim. It took two weeks for the plumbing to be fixed and we were not compensated for staying at a hotel. Despite contacting Pathlight repeatedly and putting in work orders for ALL the damages, it took 4-5 months for them to replace the carpet alone. When they pulled up the pad it was covered in mold. We had told them for months we were living in a moldy, water damaged home and they did not care!! More safety hazards. In the end, they didn't repair half of the damages from the flood. Pathlight Property Management did not uphold their end of the terms of our lease agreement. To add insult to injury, we never received our $1,995 deposit back despite reaching out to try and receive it. If I could give Pathlight 0 stars, I would!!

Paula F

1 star

Complaint - 22

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

12/07/2021

One star is even too much for this company. I am a professional and work 10-12 hours a day as does my husband. We choose a rental through this company because they were offering option to buy, however- it has been a nightmare and we have only been in our house for two months. These people are impossible to get ahold of, when you call you are on hold for 20 minutes to an hour then you get someone who cannot help you and say they are transferring you to someone who can and you are on hold another 20 minutes then get hung up on. I had a horrible pool company where they were not even maintaining my pool, they were just checking the water, I sent this video to Pathlight who sent me an addendum after several phone calls and emails to maintain my own pool. I hired a reliable pool company and who comes on Monday? The creepy pool guy from pathlights company to check my water and take a picture of my house! "all of this on video" I was charged 100.00 for a pool maintenance fee which I should not pay as my pool was not maintenance! I also was charged a 13.00 liability charge the second month but I have my own liability insurance and have proven that to them. I get an email stating it was a mistake then the next day I get an email telling me I own it! Do not,,,, I repeat ... I am warning you! I looked over all the red flags and did it anyway, do not rent from these people! If it looks too good to be true believe it!!! I am currently on hold the second time for ten minutes now waiting for the people who "can really help me" trust me this will not happen! I am going to the better business bureau and any social media outlet that I can this is a horrible horrible company!

Frank K

1 star

12/06/2021

Complaint - 23

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

I moved out, left the property in great shape. The dishwasher worked the whole time I was in the property. They said it wouldn't start, they had no proof of it not working but they replaced the dishwasher without having a repairman come out. They charged me $750 without contacting me. They will not return emails or have any one return calls. They are very unprofessional. Very disappointed with this company ripping me off.

Complaint Type: Problems with Product/Service

Status: Answered

12/20/2021

I used this company as a rent to own or rent with a right to purchase but had to end/term lease early due to domestic violence. This company uses a property management company called ***************************** who is wrongfully withholding my security deposit. Based on ******** laws they have 21 days to return my deposit to me have not done so, the property mgmt company has also not reached out or notified me in any way. I submitted a complaint against ******************* mgmt as well 078942dd-61cc-11ec-a163-0e63a05a1194.

166.    These are not isolated complaints.

167.    Hundreds of these complaints exist.

168.    Indeed, private Facebook group called "Home Partners of America—Company of Stolen Dreams" contains over 1,500 members.

169.    Only Defendants, however, are aware of the total number of complaints lodged against them, including through Pathlight's online portal and 800-number.

170.    Defendants' advertising that they will quickly make repairs and be available 24/7 misrepresents the service Defendants actually provide.

Complaint - 24

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

171.    In reality, Defendants sometimes never make requested repairs or make insufficient repairs.

172.    This Court was recently faced with a similar action between Defendants and their tenants in *Norwood v. HPA Borrower 2018-1 LLC*, No. C21-5843JLR, 2021 WL 5630961 (W.D. Wash. Dec. 1, 2021). In *Norwood*, the plaintiffs entered into a lease agreement with Defendants and reported multiple instances of roof leakage, mold, ceiling damage, insulation damage, and plumbing issues that Defendants failed to remedy.

173.    These substandard living conditions and resulting health issues forced plaintiffs to vacate their home.

## CLASS ACTION ALLEGATIONS

174.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 and seeks to represent a class of:

All persons who entered into a rental agreement with Defendants in Washington since January 2014 to the present.

175.    The requirements for class certification under Federal Rule of Civil Procedure 23 are met as follows:

    a.    Plaintiffs are informed and believe, and on that basis allege, that between January 2014 and the present (the "Class Period,") there are thousands of persons who have entered into rental agreements with Home Partners. As such, the members of the Class are so numerous that joinder of all members in one proceeding would be impracticable.

    b.    There are common questions of law and fact common to the Class, including without limitation:

        i.    Whether Defendants' contracts of adhesion illegally disclaim the covenants of habitability;

Complaint - 25

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

ii.    Whether Defendants' lease provisions are misleading;

iii.    Whether Defendants illegally required tenants obtain insurance to cover damage to Defendants' property;

iv.    Whether Defendants have failed to return security deposits in full compliance with the law;

v.    Whether Defendants mispresented the nature of their services through advertising with the intent to induce persons to sign their contracts of adhesion; and

vi.    Whether the members of the Class are entitled to damages and equitable relief, including injunctive and monetary relief.

c.    The claims of the Plaintiffs are typical of the claims of the members of the Class, who entered into rental agreements with Defendants and are now contractually bound to the misleading and unlawful terms of those agreements that breach the covenants of habitability and severely limit any recourse available to Plaintiffs and all members of the Class.

d.    The Plaintiffs will fairly and adequately represent the members of the Class and have retained counsel who are competent and experienced in class action and complex litigation.

176.    The requirements of Rule 23(b)(2) are met as described below in Plaintiffs' request for injunctive relief.

177.    The requirements of Rule 23(b)(3) are met in that:

a.    The questions of law common to the members of the Class predominate over any questions affecting only individual members.

b.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Because the damages suffered by many individual members of the Class may be relatively small in relation to the costs of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for members of the Class to redress the wrongs done to them

Complaint - 26

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

individually. Furthermore, many of the members of the Class may be unaware that claims exist against Defendants.

c.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The names and addresses of the members of the Class are available from Defendants. Notice will be provided to the members of the Class via first class mail or by the use of techniques and a form of notice similar to those customarily used in class actions.

## COUNT I

### VIOLATION OF WASHINGTON RESIDENTIAL LANDLORD-TENANT ACT, WASH. REV. CODE § 59.18

178.    Plaintiffs re-allege all prior paragraphs of this Complaint.

179.    Washington's Residential Landlord Tenant Act (RLTA), Wash. Rev. Code §§ 59.18, et. seq., "in addition to pursuit of remedies otherwise provided him or her by law[,]" preserves certain tenant remedies by allowing a tenant to notify the landlord of its failure to carry out duties required by Wash. Rev. Code § 59.18.060 or by the rental agreement. Wash. Rev. Code § 59.18.070.

180.    Defendants have violated various provisions of Wash. Rev. Code §§ 59.18, et seq., by failing to maintain the rented premises in a safe, habitable, and compliant condition.

181.    Defendants have failed to carry out duties pursuant to Wash. Rev. Code § 59.18.060, including, but not limited to:

a.    Failing to maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation in violation of § 59.18.060(1);

Complaint - 27

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

b.      Failing to maintain the structural components of the properties, including roofs, floors, walls, chimneys, fireplaces and foundations in "reasonably good repair so as to be usable" in violation of § 59.18.060(2);

c.      Failing to make repairs and arrangements necessary to put and keep the premises in as good condition as it by law or rental agreement should have been, at the commencement of the tenancy, in violation of § 59.18.060(5);

d.      Failing to maintain electrical, plumbing, heating, and other facilities and appliances supplied by Defendants in reasonably good working order in violation of § 59.18.060(8);

e.      Failing to maintain the dwelling unit in reasonably weathertight condition in violation of § 59.18.060(9);

f.      Failing to provide facilities adequate to supply heat and water and hot water as reasonably required by the tenant in violation of § 59.18.060(11).

182.    Pursuant to Wash. Rev. Code § 59.18.115(2)(a), Defendants have failed to fulfill substantial obligations that substantially endanger and impair the health and safety of their tenants, including:

a.      Exposure of the occupants to the weather;

b.      Plumbing and sanitation defects;

c.      Lack of water;

d.      Heating or ventilation systems that are not functional;

e.      Hazardous electrical systems; and

f.      Defective or inadequate exits.

183.    Plaintiffs have fully performed all obligations as tenants in accordance with Washington State law and properly notified Defendants of defective conditions that deprive them of basic human needs pursuant to Wash. Rev. Code § 59.18.070 and § 59.18.115.

Complaint - 28

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

184.    Defendants have failed to remedy defective conditions pursuant to the timelines prescribed by Wash. Rev. Code § 59.18.070.

185.    Defendants, through their conduct, are liable for causing economic and noneconomic damages to Plaintiffs and Class Members in an amount to be proven at trial.

186.    As a result of Defendants' conduct, Plaintiffs and Class Members are entitled to recover costs and attorneys' fees incurred in bringing this action and any other relief the court deems just and proper under Wash. Rev. Code §§ 59.18 et seq.

## COUNT II

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

187.    Plaintiffs re-allege all prior paragraphs of this Complaint.

188.    Defendants' residential leases contain a contractual duty of good faith and fair dealing that includes maintaining their rental properties in accordance with the Covenants of Habitability.

189.    In addition, Defendants are required to respond to Plaintiffs' maintenance requests and not unduly hinder Plaintiffs' ability to receive timely repairs.

190.    Defendants' actions and uniform course of conduct, including their constructive refusal to make even basic repairs or to unduly delay repairs, breach their contractual duty of good faith and fair dealing and unjustifiably hinder Plaintiffs' performance under the contracts.

191.    Defendants have acted in bad faith by refusing to perform their contractual duties, effectively foisting the burden of maintaining their homes onto their Tenants to generate more revenue and cut their own costs.

192.    Plaintiffs have not impeded Defendants from performing their obligations under their lease agreements in any way.

Complaint - 29

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

193.   Defendants' actions caused Plaintiffs' injury and damages, entitling Plaintiffs to the categories of remedies discussed herein.

**COUNT III**

**RESCISSION**

194.   Plaintiffs re-allege all prior paragraphs of this Complaint.

195.   Defendants control virtually every aspect of Plaintiffs' lease agreements as set forth in the general allegations hereof at paragraphs 29 through 87.

196.   Defendants' lease agreements illegally and unfairly advantage Defendants through their misleading statements and deceptive practices, as described in this Complaint, with the intent that others rely thereon in connection with the rental or sale of their residential properties. Those practices include Defendants' unlawful lease provisions that deceive and mislead consumers into believing they (a) cannot negotiate their monthly rental rates or cannot negotiate the purchase prices of the home, while forcing them to sign agreements stating they in fact did, (b) must make all repairs to their rental homes because they are rented in an "AS-IS" condition, and (c) must pay for renters' insurance or use Defendants' hand-picked "liability coverage" every month to cover the maintenance of and physical damage to Defendants' rental homes.

197.   Defendants represent to consumers that they must pay for Renters' Insurance every month to cover all maintenance of their rental homes, when Washington law requires that they, not tenants, keep the homes in reasonable repair and in compliance with applicable health and safety laws, illegally shifting the burden of maintaining Defendants' own properties onto their renters.

198.   Defendants' form lease agreements are unconscionable contracts of adhesion that are unenforceable as contrary to the public interest, policy, and law.

Complaint - 30

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

199.    Defendants' lease agreements deny consumers the legally cognizable Covenants of Habitability.

200.    Plaintiffs and the Proposed Class have incurred out-of-pocket expenses for maintenance costs associated with their leases that should never have been their responsibility to pay as a direct result of the terms of the lease agreement.

201.    As a direct and proximate result of Defendants' conduct, Defendants have received substantial benefits to which they have no entitlement, at Plaintiffs' and the Proposed Class Members' expense, including maintenance costs, rent hikes, insurance premiums, and other expenses.

202.    Plaintiffs and the Proposed Class are entitled to compensation for all the expenses they were illegally required by Defendants to bear, and that Defendants should have but did not pay.

## COUNT IV

## DECLARATORY RELIEF

203.    Plaintiffs re-allege all prior paragraphs of this Complaint.

204.    An actual controversy has arisen between Plaintiffs and the Proposed Class on one hand, and Defendant on the other hand, relating to the following matters:

a.    Whether Defendants have unlawfully failed to maintain the homes rented by Plaintiffs and the Proposed Class.

b.    What amounts Plaintiffs and the Proposed Class are entitled to receive in compensation.

c.    Whether Defendants unlawfully require tenants to procure renters' insurance to cover damage not caused by tenants to Defendants' building and structures, or to force place them in the "liability coverage" of Defendants' choosing.

Complaint - 31

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

d.    Whether the provisions of Defendants' form leases breach the Covenants of Habitability and illegally thrust the burden of repair onto to tenants.

e.    Whether tenants can be forced to sign agreements stating they either negotiated the rental or purchase price of the home when in fact, no negotiations took place.

205.    Plaintiffs and the Proposed Class further seek entry of declaratory judgment in their favor that declares Defendants' practices as unlawful and provides for recovery of sums determined by this Court to be owed by Defendants to the Plaintiffs and Proposed Class.

**COUNT V**

**INJUNCTIVE RELIEF**

206.    Plaintiffs re-allege all prior paragraphs of this Complaint.

207.    Defendants will continue their illegal practices and unlawfully deny their tenants the Covenants of Habitability.

208.    Plaintiffs and the Proposed Class have been injured and damaged, and are threatened with injury and damage, by Defendants' continued, unlawful refusal to maintain the homes Defendants themselves own, as well as through Defendants' continued use of misleading, unconscionable lease agreements, and Plaintiffs and the Proposed Class have no adequate remedy at law.

209.    Defendants have acted, and threatened to act, on grounds generally applicable to the individual members of the Proposed Class, thereby making appropriate preliminary and permanent injunctive relief enjoining Defendants and their agents from continuing the unlawful practices alleged.

**COUNT VI**

**UNJUST ENRICHMENT**

210.    Plaintiffs re-allege all prior paragraphs of this Complaint.

Complaint - 32

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

211.     Plaintiffs and the Proposed Class conferred a benefit on the Defendants by, among other things, paying rent and for the costs of maintenance that Defendants should have paid.

212.     Defendants voluntarily accepted and retained through today the benefits conferred by Plaintiffs' and the Proposed Classes' payments for rent and the costs of maintenance. The circumstances are such that it would be inequitable for the Defendants to retain these payments.

213.     Defendants consciously accepted the benefits that Plaintiffs and the Proposed Class conferred, and those benefits were not conferred gratuitously.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully asks this Court to award judgment against Defendants as follows:

1.     Declaring that Defendants' actions, as set forth above, constitute multiple, separate violations of Wash. Rev. Code § 59.18; Wash. Rev. Code § 19.86; and that Defendants' form lease agreements are void;

2.     Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parents or controlling entities, subsidiaries, and all other persons acting in concert or participation with them, from engaging in deceptive practices and making false or misleading statements in violation of Wash. Rev. Code § 19.86.090;

3.     Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parents or controlling entities, subsidiaries, and all other persons acting in concert or participation with them, from waiving or modifying the Covenants of Habitability in violation of Wash. Rev. Code 59.18.230;

4.     Awarding judgment against Defendants for restitution and disgorgement under the general equitable powers of this Court, and any other authority, for all persons injured by Defendants' acts as described in this Complaint;

Complaint - 33

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

1    5.      Awarding Plaintiffs their costs and attorneys' fees, as permitted by the Court and
2    as authorized by Wash. Rev. Code § 19.86.020; Wash. Rev. Code § 59.18.010;

3    6.      Awarding Prejudgment interest; and

4    7.      Granting such further relief as provided by law or equity or as the Court deems
5    appropriate and just.

Complaint - 34

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101

Date: September 21, 2022

Respectfully submitted,

**LEMMON LAW FIRM, LLC**

/s/ *Andrew A. Lemmon*
Andrew A. Lemmon
WA State Bar No. 53034
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6783
Fax: (985) 783-1333
andrew@lemmonlawfirm.com
alemmon@milberg.com

**HELLMUTH & JOHNSON, PLLC**

 /s/ *Anne T. Rega*n
Anne T. Regan *(pro hac vice pending)*
Lindsey L. Larson *(pro hac vice pending)*
8050 West 78th Street
Edina, Minnesota 55439
Tel:    (952) 941-4005
Email: aregan@hjlawfirm.com
Email: llabellelarson@hjlawfirm.com

Scott Harris
**Milberg Coleman Bryson Phillips Grossman, PLLC**
900 W. Morgan St.
Raleigh, North Carolina 27603
Tel:    (919) 600-5000
Email: sharris@milberg.com

Gary Klinger
**Milberg Coleman Bryson Phillips Grossman, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel:    (866) 252-0878
Email: gklinger@milberg.com

**ATTORNEYS FOR PLAINTIFFS**

Complaint - 35

Hellmuth & Johnson, PLLC
8050 West 78th Street
Edina, MN 55439
(952) 941-4005

Milberg Coleman Bryson
Phillips Grossman, PLLC
1420 Fifth Ave, Suite 2200
Seattle, WA 98101