UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FRANK RICHMOND et al., <br><br> Plaintiffs, <br> v. <br><br> HOME PARTNERS HOLDINGS LLC et al., <br><br> Defendants. | CASE NO. 3:22-cv-05704-DGE <br><br> ORDER GRANTING PARTIAL MOTION TO DISMISS (DKT. NO. 39) |

## I  INTRODUCTION

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 39). For the reasons discussed herein, the Court GRANTS Defendants' motion and dismisses Plaintiffs' claims under the Washington Consumer Protection Act ("CPA") as well as claims related to the imposition of attorney fees under the Washington Residential Landlord-Tenant Act ("RLTA").

## II  BACKGROUND

Plaintiffs Frank Richmond, Michael McDermott, and Kelley McDermott bring suit individually and on behalf of others similarly situated, alleging that Defendants Home Partners

1  Holdings LLC, HP Washington I LLC, HPA Borrower 2017-1 LLC, and OPVHHJV LLC, d/b/a
2  Pathlight Property Management violated the RLTA, the CPA, and the duty of good faith and fair
3  dealing through the terms of their allegedly unlawful and adhesive leases.  (*See generally* Dkt.
4  No. 35.)  Plaintiffs allege that HP Washington I LLC,  HPA Borrower 2017-1 LLC, and
5  Pathlight Property Management are subsidiaries, agents, joint ventures, or alter egos of
6  Defendant Home Partners Holdings LLC.  (*Id.* at 5.)

      Defendants run a lease-to-own residential real estate business.  (*Id.* at 6–8.)  To encourage potential tenants to participate in their lease-to-own program, Defendants allegedly offer various assertions about the quality of the homes and offer professional property management services provided by Pathlight Property Management.  (*Id.* at 7–9.)  According to Plaintiffs, "[o]nce a prospective tenant expresses interest in a particular property, Defendants together claim they expend significant effort and resources to purchase a particular home on the prospective tenant's behalf."  (*Id.* at 8.)  However, Defendants, in fact, already own most of the properties they lease to tenants.  (*Id.*)  Plaintiffs challenge Defendants' form rental agreement, which allegedly imposes adhesive terms that abridge tenants' rights in contravention of the RLTA and the CPA.  (*Id.* at 11–12.)  For example, Defendants' lease provisions allegedly "require tenants to pay for Defendants' attorneys to review their ledgers for purposes of determining whether a tenant is allegedly in default of any lease obligation" ("attorney fees"). (*Id.* at 16.)  Plaintiffs also assert Defendants permit "substandard living conditions" at their properties and have been subject to numerous complaints nationally.  (*Id.* at 26, 29.)

      The named Plaintiffs either currently or previously entered into a lease-to-own agreement with the Defendants.  Mr. Richmond entered into a lease agreement with Defendant HP Washington I LLC in September 2021.  (*Id.* at 17.)  The McDermotts currently maintain a lease

with Defendant HPA Borrower 2017-1 LLC.  (*Id.* at 23.)  Plaintiffs allege the properties they rented quickly fell into disrepair and that Defendants failed to promptly address issued when raised.  (*See, e.g.*, *id.* at 23–25.)

Additionally, Mr. Richmond alleges he was required to pay (and not allowed to negotiate) several fees that purportedly violate the RLTA.  Mr. Richmond was required to pay $13 per month to maintain $100,000 in property insurance for the rental property under Defendants' Master Resident Liability Program ("MLRP").  (*Id.* at 14, 19.)  Mr. Richmond notified Defendants he owns his own liability insurance plan (which would eliminate the requirement to participate in the MLRP per the terms of his lease), but has continued to be billed for the MLRP and has not been reimbursed by Defendants.  (*Id.* at 19–20.)  Defendants also required Mr. Richmond to pay a monthly Utility Billing Service Fee ("UBSF") to compensate for administrative costs associated with utility management and a fee to regularly replace the HVAC filters in his rental unit ("HVAC filter fee").  (*Id.* at 15, 21.)  Defendants subsequently shared with Mr. Richmond a new agreement reflecting an increase in the purchase price of his home and monthly rent for the remainder of his lease.  (*Id.* at 22.)  Mr. Richmond refused to sign the agreement and vacated the premises.  (*Id.*)  Mr. Richmond alleges Defendants refused to return the entirety of his security deposit and withheld unlawful fees "for items like 'Liability Coverage', 'Service Fee', 'Water Utility Recovery', 'Utility Billing Service Fee' and a 'Late Fee Charge.'"  (*Id.*)

Plaintiffs filed their complaint on September 21, 2022.  (Dkt. No. 1.)  Plaintiffs subsequently filed an amended complaint on December 27, 2022, in which they added a claim under the CPA.  (Dkt. No. 35.)  Plaintiffs seek to certify a class of "[a]ll persons who entered into a rental agreement with Defendants in Washington since January 2014 to the present."  (*Id.*

ORDER GRANTING PARTIAL MOTION TO DISMISS (DKT. NO. 39) - 3

at 30.) Plaintiffs specifically allege Defendants violated the RLTA, breached the duty of good faith and fair dealing inherent in all of their leases, violated the CPA through the imposition of their various adhesive fees, and were unjustly enriched. (*Id.* at 32–38.) Plaintiffs seek injunctive and declaratory relief, in addition to monetary damages. (*Id.* at 39.)

On January 23, 2023, Defendants filed their partial motion to dismiss Plaintiffs' claims under the CPA. (Dkt. No. 39.) Defendants argue all named Plaintiffs lack standing to challenge the imposition of attorney fees for determining whether tenants violated their lease terms; the McDermott Plaintiffs lack standing to assert their claims; Plaintiffs' CPA claims are barred by the RLTA under Washington law; and Plaintiffs failed to adequately plead their CPA claims because they are subject to heightened pleading standards. (*Id.* at 3.) Plaintiffs filed their response in opposition to the motion on February 22, 2023 (Dkt. No. 43) and Defendants filed a timely reply (Dkt. No. 45).

### III    DISCUSSION

**A. Plaintiffs Have Standing to Assert Nearly All of Their Challenged Claims**

At the outset, the Court must address Defendants' claims that this court lacks jurisdiction over certain of Plaintiffs' claims. *See Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). Defendants assert that this Court lacks subject matter jurisdiction over certain claims included in Counts I and III pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs never suffered an injury in fact and therefore lack standing to assert these claims. (Dkt. No. 39 at 8.)

To establish standing, Plaintiffs must show they have

> suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002).  Plaintiffs bear the burden of establishing the elements of standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Challenges to subject matter jurisdiction may either be "facial" or "factual."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  Under a facial challenge, the moving party takes the allegations in the complaint as true but argues these allegations do not support a finding of subject matter jurisdiction.  *Id.*  A factual attack, by contrast, seeks to challenge the veracity of the pleadings through outside information.  *Id.*

Where, as here, a party raises a facial attack on the court's jurisdiction, the Court accepts the allegations in the complaint as true and "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.*; *see also Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Defendants argue Plaintiffs lack standing to assert challenges to five specific fees imposed by Defendants as conditions of their tenancy or as part of the lease agreement itself.  (Dkt. No. 39 at 8–9.)  None of the named Plaintiffs, according to Defendants, were charged attorney fees for being in default of their lease obligations and therefore they lack standing to bring claims related to these fees.  (*Id.* at 8.)  Additionally, Defendants argue the McDermott Plaintiffs do not allege that they had to pay the UBSF, the MRLP, the HVAC filter fee, or late fees.  (*Id.*)  The McDermott Plaintiffs have thus not pled an injury in fact that would allow them to challenge the imposition of these five fees.  (*Id.*)

Plaintiffs, in response, assert that Defendants' standing argument is, in fact, a motion to strike, which is disfavored at this stage in class litigation.  (*See* Dkt. No. 43 at 11–12.)  Plaintiffs

ORDER GRANTING PARTIAL MOTION TO DISMISS (DKT. NO. 39) - 5

also argue they have standing to bring a claim under the RLTA because they have suffered an injury in fact, monetary harm, and only need to establish standing for each form of relief sought. (*Id.*)

The Court disagrees with Plaintiffs that Defendants' arguments are merely a motion to strike, which need not be addressed at this stage in the litigation.  Though the Court need not determine whether unnamed class members have standing before addressing issues related to class certification, standing for the named plaintiffs in a class action is a prerequisite for the Court to address merits issues.  *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015); *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) (noting that '"once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."').  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) is not to the contrary.  In *Amchem*, the Court held that an analysis of the appropriateness of class certification at the class settlement stage was antecedent to an analysis of standing because resolution of class certification could moot the standing issues in the case. *Id.* at 612.  The resolution of class certification claims here is not logically antecedent to the issue of standing because certain standing concerns would exist even were the Court to grant class certification.  The Court declines to exercise its discretion to address standing issues at the class certification stage.

The Court also agrees the named Plaintiffs collectively must establish standing for each claim asserted.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1125 (S.D. Cal. 2021) ("The fact that

1   this action is a putative class action does not excuse Plaintiffs' obligation to show standing for
2   each claim asserted."). To focus the inquiry solely on the specific form of relief requested and
3   not the precise injury being alleged would undermine one of the primary purposes of the
4   standing inquiry. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Requiring a
5   plaintiff to demonstrate a concrete and particularized injury caused by the defendant and
6   redressable by the court ensures that federal courts decide only 'the rights of individuals.'").

7         However, Defendants err in asserting that each Plaintiff needs to establish standing
8   individually as to each claim. "The general rule applicable to federal court suits with multiple
9   plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not
10  decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), *as
11  amended* (Mar. 8, 1994); *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47,
12  53 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's
13  case-or-controversy requirement."). The Court will therefore analyze whether at least one
14  plaintiff has adequately alleged standing as to each of the allegedly unlawful fees listed in the
15  complaint.[1]

16        Here, Plaintiffs allege that Mr. Richmond paid (or was charged) the UBSF (Dkt. No. 35
17  at 21), the MLRP (*id.* at 20), the HVAC filter fee (*id.*), and late fees (*id.* at 22). Taking these
18  allegations as true, Mr. Richmond adequately alleges an economic injury-in-fact caused by the
19  Defendants as to each of these fees. "Economic injury is clearly a sufficient basis for standing."

20

---

21  [1] As noted above, Plaintiffs allege various violations of the RLTA related to the imposition of unauthorized fees but appear to combine these allegations into one RLTA and one CPA claim.
22  (*See* Dkt. No. 35 at 32–36.) For purposes of standing, the Court determines whether each of the alleged fees at issue in Defendants' motion provide an adequate and independent basis for
23  standing. *See, e.g.*, *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021) (Dismissing claims related to certain products in putative class action for lack of standing because
24  the named plaintiff did not buy the alleged products at issue).

*San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).  As such, the Court properly has jurisdiction to hear these claims and need not weigh whether the McDermott Plaintiffs separately have standing to assert these claims.

However, the Court agrees with Defendants that none of the named Plaintiffs have standing to assert claims related to the alleged imposition of attorney fees.[2]  None of the named Plaintiffs allege they were required to pay attorney fees to determine whether they were in default of lease obligations.  (*See generally* Dkt. No. 35.)  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' claims related to attorney fees for lack of subject matter jurisdiction.

### B.  Plaintiffs May Not Bring CPA Claims for Disputes Covered by the RLTA

The Court agrees Plaintiffs' CPA claims related to the imposition of the UBSF, the MLRP, the HVAC filter fee, and late fees, as currently alleged, are precluded by Washington law.

Defendants move to dismiss Plaintiffs' CPA related claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  "Under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party."  *Nw. Env't Advocs. v. U.S. Dep't of Com.*, 283 F. Supp. 3d 982, 990 (W.D. Wash. 2017).  "Dismissal for failure to state a claim is appropriate only 'if it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which

---

[2] Plaintiffs complaint does not clearly allege whether they consider the imposition of attorney fees a violation of the RLTA or the CPA.  Plaintiffs cite specifically to the RLTA when addressing these fees in their complaint (Dkt. No. 35 at 16) so the Court will treat these fees as alleged violations of the RLTA.

would entitle him to relief.'" *Vasquez v. Los Angeles ("LA") Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001)).

It is well-established under Washington law that "residential landlord-tenant problems . . . [are not] included within the Consumer Protection Act." *State v. Schwab*, 693 P.2d 108, 113–14 (Wash. 1985). While not "all disputes between landlords and tenants must be resolved under the RLTA[,] . . . when the RLTA provides a set of rights and remedies, those rights and remedies operate to the exclusion of the CPA." *Lewis v. Zanco*, 483 P.3d 836, 838 (Wash. Ct. App. 2021), *review denied*, 493 P.3d 736 (Wash. 2021).

Defendants assert Plaintiffs' CPA claims related to the various fees imposed under the terms of the rental agreement are precluded by the Washington Supreme Court's holding in *Schwab*. (Dkt. Nos. 39 at 9–16; 45 at 5–9.) In response, Plaintiffs argue: 1) the Washington Court of Appeals' ruling in *Lewis* establishes that parties may advance CPA and RLTA claims where the underlying rental agreement is unenforceable (Dkt. No. 43 at 13–16) and; 2) the fees at issue are "not regulated by the RLTA." (*Id.* at 16.)

Washington case law and statutes establish that "the RLTA covers disputes over illegal leases." *Lewis*, 483 P.3d at 838. Washington Revised Code § 59.18.230, for example, provides for damages where "a landlord knowingly uses a rental agreement containing provisions known by him or her to be prohibited." Wash. Rev. Code § 59.18.230(3). The same provision also provides that rental agreements that include provisions whereby tenants waive or forego rights under the RLTA are "unenforceable." *Id.* The Court therefore finds Plaintiffs' CPA claims related to the aforementioned fees are precluded by law and must be dismissed.

Plaintiffs' claims also fail for a second reason—the fees at issue are specifically contemplated by the RLTA and therefore barred under *Schwab*. Plaintiffs cite to the definition

of "rent" in the RLTA to argue that the UBSF, the MLRP, and the HVAC filter are "expressly excluded from rent." (Dkt. No. 43 at 16.) However, the RLTA defines rent as

> **recurring and periodic charges identified in the rental agreement for the use and occupancy of the premises, which may include charges for utilities**. Except as provided in RCW 59.18.283(3), these terms do not include nonrecurring charges for costs incurred due to late payment, damages, deposits, legal costs, or other fees, including attorneys' fees.

Wash. Rev. Code § 59.18.030 (29) (emphasis added). The fees Plaintiffs take issue with are recurring and periodic charges identified in the rental agreement. As Plaintiffs note, "Defendants' UBSF is at least $9.95/month." (*See* Dkt. No. 35 at 15). Additionally, "Defendants also require tenants to pay an 'HVAC filter fee' pursuant to an Air Filter Addendum and 'Utility & Maintenance Reduction Program' of $15 per month." (*Id.*) (emphasis added). The MLRP is similarly imposed on a monthly, recurring basis. (*Id.* at 14.) These charges were included in at least one of the Plaintiffs' leases. (*See* Dkt. No. 39-1 at 8, 31, 45).[3] Late fees are similarly covered by the RLTA. Landlords are specifically authorized to charge late fees "[i]f rent is more than five days past due." Wash. Rev. Code § 59.18.170(2).

The fees Plaintiffs allege violate the CPA (the UBSF, MLRP, HVAC filter fees, and late fees) are covered by the RLTA and therefore precluded by law. The Court thus GRANTS Defendants' motion to dismiss Plaintiffs' CPA claims.[4]

---

[3] "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court may appropriately consider the leases attached to Defendants' motion to dismiss because the complaint refers to Plaintiffs' leases (*see, e.g.*, Dkt. No. 35 at 18), the leases are central to Plaintiffs' claims, and Plaintiffs do not challenge the authenticity of the copy of the leases.

[4] Because these CPA claims are precluded by Washington law, the Court does not address whether the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to Plaintiffs' CPA claims and whether Plaintiffs adequately pled these claims.

## IV     CONCLUSION

Accordingly, and having considered Defendants' motion (Dkt. No. 39), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' motion is GRANTED and Plaintiffs' CPA claims and claims related to the imposition of attorney fees under the RLTA are DISMISSED.

Dated this 5th day of April, 2023.

David G. Estudillo
United States District Judge